# UNITED STATES DISTRICT COURT
**District of Kansas**
(Topeka Docket)

**UNITED STATES OF AMERICA,**
**Plaintiff,**

**v.** **CASE NO. 25-40027-AWM**

**MICHAEL STEVEN PODRYBAU,**
**Defendant.**

## GOVERNMENT'S SENTENCING MEMORADUM

**COMES NOW** the United States of America, by and through Ryan A. Kriegshauser, United States Attorney for the District of Kansas, and Sara L. Walton, Assistant United States Attorney, and respectfully requests the Court impose a sentence at the high-end of the guideline range of 188 months imprisonment, followed by a term of 5 years supervised release, restitution in the amount of $35,000, and a $100 special assessment.

I. SENTENCING IN GENERAL

The sentencing court must engage in a three-part analysis to determine the appropriate sentence. First, the court must consider the Guideline range. A sentence imposed within the guideline range is presumptively reasonable. *See Rita v. United States*, 551 U.S. 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Second, the court must address any grounds for departure provided in the policy statements. Third, the court last considers the factors under 18 U.S.C. § 3553(a). See *Rita*, 551 U.S. at 351. The court's responsibility is to impose a sentence that is "sufficient" but "not greater than

necessary" to meet the sentencing objectives in that provision. *United States v. Kaspereit*, 994 F.3d 1202, 1214 (10th Cir. 2021) (internal citations omitted). See also 2021 Guidelines Manual, § 1B1.1, pg. 17-18. See also 2021 Guidelines Manual, § 1B1.1, pg. 17-18.

## II. THE SENTENCING GUIDELINES

The recommendations of the Sentencing Guidelines are no longer mandatory, but sentencing courts "must consult these Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). The Sentencing Guidelines are "the 'starting point and the initial benchmark.'" *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007) (noting that the Guidelines should "be kept in mind throughout the process")).

On November 5, 2026, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) using the 2026 United States Sentencing Guidelines Manual (USSG) (Doc. 42). The guideline for a violation of 18 U.S.C. § 1466A(a)(1) is USSG § 2G2.2. The base offense level for the defendant's conviction is 22, with applicable adjustments, the total offense level is 34. The defendant's criminal history category is I, resulting in a guideline imprisonment range of 151 months to 188 months. As detailed in the PSR, the defendant lodged numerous objections to the facts contained in the offense conduct, as well as to the conditions of supervised release, but did not object to the overall guideline calculation.

## III. GOVERNMENT'S ARGUMENTS IN SUPPORT OF A 188-MONTH TERM OF IMPRISONMENT.

A sentence of 188 months imprisonment is sufficient but not greater than

necessary for this defendant who engaged in the sexual exploitation of minors through the receipt of child sexual abuse material (CSAM) and through the use of super intelligence[1] to create his own CSAM. Further, the defendant involved others in his illegal behavior through the distribution of CSAM while engaged in sexual communications with adults. Lastly, as reflected in the PSR, the defendant admitted to the sexual touching of minors (Doc. 42, ¶ 24) and reportedly committed the hands of abuse of a minor when he was a child himself.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). 18 U.S.C. § 3553(a) provides seven statutory factors for the court to consider to impose a sentence that is sufficient, but not greater than necessary: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes and provide rehabilitation; (3) the sentences that are legally available; (4) the sentencings guidelines; (5) the Sentencing Commission's policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution. The sentencing court can and should engage in a holistic inquiry of these factors. *United States v. Lente*, 759 F.3d 1149, 1174 (10th Cir. 2014). A district court should not rely solely on

---

[1] To comply with Executive Order 14434 the government will refer to artificial intelligence of AI by the terminology adopted the Executive Branch of super intelligence or SI.

one § 3553(a) factor without addressing other relevant factors. *United States v. Walker*, 844 F.3d 1253, 1259 (10th Cir. 2019). However, the district court need not afford equal weight to each § 3553(a) factor. *United States v. Cookson*, 922 F.3d 1079, 1094 (10th Cir. 2019).

**The nature and circumstances of the offense and the history and characteristics of the defendant.**

First, the Court should consider the nature and circumstances of the offense and the history and characteristics of the defendant. For this defendant, that requires the Court to weigh the defendant's deplorable conduct with him as an individual.

*Nature and Circumstances of the Offense*

The nature and circumstances of the offense justify a sentence at the high-end of the Guideline range. The defendant engaged in the traditional trafficking of child pornography and the novel act of using SI to manufacture images of child pornography from innocent photos of children.

The defendant was the subject of two separate FBI investigations within a year. First, in 2022, an individual reported to the FBI National Threat Operations Center (NTOC) that the defendant was engaged in the trafficking of CSAM, as well threatening and concerning behavior towards another individual (hereinafter "Person 1"). The FBI opened the investigation, ultimately deferring to the local sheriff's office for follow-up. Second, while the first investigation was unfolding, the defendant was identified during a covert investigation as receiving CSAM through the filesharing network Freenet. The files the defendant sought out depicted the

exposed vaginas of prepubescent minors. The defendant's predatory behavior took many forms, including using CSAM to engage in sexual explicit communications with adults, accessing and downloading CSAM from the internet, using his IT background to create CSAM using SI technology and allegations of deviant sexual behavior towards minors.

The defendant's conduct was deliberate. He took steps to protect his online privacy and anonymity through the use of a Tor browser to view and download CSAM. Additionally, he utilized Freenet, a peer-to-peer filesharing network to seeking out CSAM. When a user uploads a file to Freenet, the software breaks down the file into pieces (called "blocks") and encrypts each piece. The encrypted pieces are then distributed randomly and stored throughout the users network of peers and beyond. Because of Freenet's enhanced anonymity, anticensorship and protection of downloaders, it is commonly used by predators seeking CSAM with over 124,000 unique files with 300 million blocks related to CSAM discovered on the network.[2]

On May 9, 2023, the FBI executed a search warrant on the defendant's residence and seized multiple electronic devices. The electronic devices were submitted to the FBI Heart of America Regional Computer Forensics Laboratory (HARCFL) for examination. Six of the devices contained evidence indicative of the sexual exploitation of minors, with artifacts dating back to 2019. One video file, accessed on April 16, 2023, was approximately 31 minutes long and contained a series

[2] Levine, B.N., Lynn, B., Liberatore, M., and Wright, M. (2020). "A Forensically Sound Method of Identifying Downloaders and Uploaders in Freenet." ACM SIGSAC Conference on Computer and Communication Security (Nov. 9-13, 2020), 1497-1512, 1499.

of video clips depicting adult males ejaculating on infants, as well as images depicting girls ages 5-11 performing oral sex on adult males until the males ejaculated on the girls' faces or in the girls' mouths. Over 1000 images of CSAM were located on the devices.

Additionally, a WickrPro chat thread from March-April of 2023 was found on the defendant's phone. During the chat, the defendant engaged in a sexually explicit conversation with Person 1 about CSAM and sent CSAM to Person 1, including several images of SI-generated CSAM. During the thread, the defendant spoke about his advanced and technical knowledge of SI and how to manipulate the then current technology. For example, while sending SI CSAM images to Person 1, the defendant stated:

> "Jand hard to say right now whether or not its actually "illegal"
>
> "if I'm successful with the facial recognition cross training I'm trying to do, you might even be able to get it to do a video of a specific person;" and
>
> "What i'll want to figure out next is how to prompt the video generation from TeaseAI output, so you have a model that acts out whats going on in real time."

The pattern of the defendant's offense conduct and use of advancing technology to further exploit minors for his own sexual gratification weighs heavily in favor of a sentence at the high end of applicable sentencing range. Although the Court must consider factors beyond the nature of circumstances of the offense conduct, the Court should nonetheless give significant weight to this factor in crafting his sentence.

*History and Characteristics of the Defendant*

All of us face challenges in our lives, some more severe, some less severe. But

no challenge excuses the defendant's conduct. His criminal conduct progressed from the mere trafficking of child pornography to the manufacture of images and prospect of using real people through facial recognition to create additional CSAM, as well as engaging in other sexually deviant behavior.

The government anticipates that the defendant will direct the Court to his lack of criminal history at the time of the offense and his own childhood trauma as mitigation to place downward pressure on his sentence. However, no mitigating factors are present to an unusual degree to distinguish the defendant from similarly situated offenders.

As reflected in Part C of the PSR, the defendant's reports he excelled at school and was a member of National Honor's Society. He briefly attended Fort Hays State before he withdrew to pursue a career in IT. He was worked in the IT industry until he was arrested. He is a father. His criminal history category is I. However, the defendant is not unique in the community of child pornography offenders. Child pornography offenders are overwhelming white, United States citizens with little to no criminal history. Specifically, per the Commission's available data on child pornography offenders from fiscal year 2025, 73% of the offenders were white, 95% were United States citizens, and 74% fell into criminal history category I.[3]

The defendant may have suffered sexual abuse himself as child, and the government is sensitive to such trauma. However, available research on the victim-offender cycle of male sexual abuse does not support a connection between past abuse

---

[3] *See https://www.ussc.gov/research/quick-facts/child-pornography*

and future abusing.[4] Prior victimization at best may lessens the moral culpability of the defendant but does not in any way minimize his behavior and legal culpability.

Despite his criminal score, the defendant's history was far from law abiding. The evidence retrieved from the defendant's devices strongly suggests he was involved in the trafficking of CSAM since at least 2019. In 2012, he was charged in Colorado with child exploitation. Per the defendant's stepfather, the charges we "tossed" because the case was "botched." The defendant also admitted to daily use of marijuana and methamphetamine. Further, after the defendant's indictment, an individual came forward to the USAO and FBI and disclosed that when the defendant was approximately 9-10 years, the defendant began to sexually abuse the individual. The abuse lasted for approximately 5 years.

On balance, the defendant could have sought treatment for the abuse he suffered as a child and failed to do so. Only after his arrest did he seek outpatient treatment, which he left after failure to adjust to the program rules. The nature and circumstances of these offenses and non-offense conduct weighs heavily in favor of the government's recommended sentence of 188 months.

---

[4] "The victim-offender cycle in male sexual abuse has been popularized as an explanation of why some males sexually offend. However, there are serious limitations to this explanation…" Lambie, Ian et al., "Resiliency in the victim-offender cycle in male sexual abuse" in Sex Abuse: A Journal of Research and Treatment 14(1) (2002) at 43. *See also* Glasser, M. et al., "Cycle of child sexual abuse: links between being a victim and becoming a perpetrator" in The British Journal of Psychiatry 179 (2001) at 488 (noting that "the data do not provide strong support for a cycle of sexual substantial proportion of male perpetrators"); and Briggs, F. and R. Hawkins, "A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders" in Child Abuse & Neglect 20(3) (1996) at 230 (concluding that "[S]exual abuse at particular ages and frequency of abuse do not of themselves necessarily lead to an increased likelihood of perpetuating abuse across generations.").

**The need for a sentence to reflect the seriousness of the crime, to promote respect for the law and to provide just punishment for the offense**

Second, the sentence must reflect the seriousness of the crime, to promote respect for the law and to provide just punishment for the offense. Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976). Here, the seriousness of the crime, the need for deterrence, and just punishment justify a sentence of 188 months.

With the proliferation of SI technology, offenders such as the defendant will continue to evolve in the methods and means of sexually exploiting children. Those with a sexual interest in children are no longer constrained by the receipt and distribution of existing child pornography, they can manipulate and even create new images of CSAM. These new images, often indistinguishable from real images, will become the currency of these traffickers, victimizing both children and adults, countless times without their knowledge. The Court is in a position to send a message that this conduct will not be tolerated or minimized in severity.

*Seriousness of the Crime*

Crimes involving the exploitation of children are unquestionably some of the most serious crimes before the Court. See *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 244 (2002) ("The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people."). Congress has plainly indicated that "[e]very instance of viewing images of child pornography represents a

…repetition of their abuse." 18 U.S.C. § 2251, (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub.L.No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)). These are not mere pictures, rather "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *New York v. Ferber*, 458 U.S. 747, 758 (1982); *see also* Child Protection Act of 1984, Pub. L. No. 98–292, 98 Stat. 204 (1984).

Considering the seriousness of the defendant's conduct, especially the repeated harm inflicted on the victims of existing CSAM and the creation of new images with SI, a high-end sentence of 188 months is appropriate punishment.

**The need for the sentence to deter future criminal conduct, prevent the defendant from committing more crimes and provide rehabilitation.**

*Deter Future Criminal Conduct and Protecting the Public*

Congress, the Supreme Court, and the Sentencing Commission believe deterrence is a very important factor when dealing with those who sexually exploit children. *United States v. Ferber*, 458 U.S. at 760. In *Ferber*, the Court held: "[T]he most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."

A lengthy custodial sentence is necessary to minimize the risk of harm to the public posed by the defendant. Research focused on federal offenders published in the *Journal of Sexual Aggression* underscores the grave risk that crimes like possession and distribution of child pornography pose to children. The lack of physical contact in these offenses has fostered a frequent, erroneous assumption that

"these offenders are somehow distinct from child molesters (i.e., 'hands-on' abusers)" and therefore not deserving of guideline sentences. M.L. Bourke, et. al., *The Use of Tactical Polygraph with Sex Offenders*, J. of Sexual Aggression 1, 5 (2014). (The authors are of this article were exclusively federal researchers or investigators, from the U.S. Marshals Service, FBI, U.S. Postal Inspection Service, U.S. Secret Service and U.S. Attorney's Office).

Significantly, in a sample of 127 suspects with no known history of hands-on offending, only 4.7% admitted sexually offending against at least one child victim. During polygraph, an additional 52.8% of the men tested disclosed hands-on sexual abuse. Id. at 17. The researchers drew the following conclusions from their work: 1) researchers, treatment providers and legal officials should avoid placing offenders into groups labeled as "hands-off" based on the absence of such crimes in their criminal histories; 2) the study affirmed extant research that child pornography offenders are sexually attracted to children, and that a large percentage of these individuals have victimized at least one child via an act of hands-on sexual abuse; 3) "significant crossover" exists between contact and non-contact child exploitation because of the shared motivational pathway – sexual interest in children. Id. at 11, 20-21.

Here, although the defendant was never charged or convicted with a hands-on sexual offense, there is evidence that as a child he sexually abused another child. This behavior continued into adulthood as the defendant admittedly stated to Person 1 that he grabbed a minor's breast. *See* Doc. 42, ¶ 24.

*Prevention and Rehabilitation*

A sentence of 188-months imprisonment will protect the public from further crimes of the defendant and provide the defendant with the resources and opportunity for rehabilitation. While imprisoned with the United States Bureau of Prisons (USBOP), the defendant will have access to treatment in a community-based setting. USBOP operates a Sex Offender Management Program (SOMP) which offers a Non-Residential Sex Offender Treatment Program (SOTP-NR). The goals of the SOTP-NR include: (1) decrease the risk of sexual reoffending; (2) increase resilience and improve quality of life; (3) build healthy, rewarding, and meaningful relationships; and (4) develop a new sense of purpose and meaning in life. The available programs help to address distorted thinking, manage reactions, accept responsibility and improve social skills and overall interpersonal functioning.

In addition, a term of 5 years supervised release pending discharge from USBOP is justified in this case. "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Supervised release is not a punishment in lieu of incarceration. *See United States v. Granderson*, 511 U.S. 39, 50 (1994). Five years of supervised release is reasonable and appropriate in this case to achieve rehabilitative ends and continue with a necessary treatment plan.

A 188-month sentence followed by a 5-year term of supervised release reflects the seriousness of the crime, the need for deterrence, and just punishment. Further, the defendant will have access to necessary treatment to aid in rehabilitation.

**The sentences that are legally available.**

The minimum term of imprisonment for the defendant's conviction is 5 years imprisonment. A non-custodial sentence violates the Congressional mandate that offenders engaged in this conduct must serve a term of imprisonment.

**The sentencing Guidelines.**

Fourth, the Court must consider the sentencing Guidelines. The government is requesting a guideline sentence; therefore, this factor weighs in favor of the government's recommendation.

**The Sentencing Commission's policy statements.**

Fifth, the Sentencing Commission's policy statements focus on the three Congressional objectives of the Sentencing Reform Act of 1984: (1) combat crime through an effective, fair sentencing system; (2) create reasonable uniformity in sentencing and (3) create proportionality in sentencing through a system that imposes appropriately different sentence for criminal conduct of differing severity. See 2024 Guidelines Manual, pg. 1-5. The government's recommended sentence fulfills these objectives.

**The need to avoid unwarranted sentence disparities.**

Sixth, the Court must consider the need to avoid unwarranted sentence disparities. Courts generally address this factor through the use of the guideline range itself. *United States v. Doty,* 150 F.4th 1351, (10th Cir. 2025)(analysis of disparate sentencing factor). *United States v. Gantt*, 679 F.3d 1240, 1248–49 (10th Cir. 2012). When a district court "correctly calculates and carefully reviews the

Guidelines range, it necessarily gives significant weight and consideration to the need to avoid unwarranted disparities," *Gall*, 552 U.S. at 54. Additionally, the Tenth Circuit has emphasized the importance of the word *unwarranted* and noted that reports on national averages are not dispositive because they do not provide information into a defendant's individual history and characteristics. *United States v. Lucero*, 130 F.4th 877, 887 (10th Cir. 2025). Further, the Tenth Circuit has noted that some differences are inevitable, for "no two cases are identical." *United States v. Franklin*, 785 F.3d 1365, 1372 (10th Cir. 2015).

The national average in 2025 for sentences imposed under U.S.S.G. § 2G2.2 was 106 months, and the Tenth Circuit average was 108 months. However, those statistics provide no information regarding the specific offense conduct, nor does it differentiate between possession and the more severe trafficking offenses.

A review of sentences imposed in other cases involving SI generated material is instructive as all defendants were sentence above the national average: *United States v. Weber*, 24-cr-40035-TC (District of Kansas); *United States v. Jordan Fautz*, 24-cr-26-DJH (Western District of Kentucky) *United States v. James Smelko*, 22-cr-00146-MJH (Western District of Pennsylvania); *United States v. Eric Bretland*, 24-cr-00102-TMR (Southern District of Ohio); and *United States v. David Tatum*, 22-cr-157 (Western District of North Carolina).

A sentence of 188 months, although outside the average range, would not be an *unwarranted* disparity for this defendant.

**The need for restitution.**

Lastly, seventh, the need for restitution is a factor the Court should consider. The defendant did not object to the restitution amount of $35,000 provided for in the PSR.

## IV. CONCLUSION

A guideline sentence of 188-months is sufficient, but not greater than necessary to achieve the sentencing objectives of 18 U.S.C. § 3553.

Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney

*/s/ Sara L. Walton*
Sara L. Walton, KS Bar No. 24106
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
sara.walton@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Sara L. Walton
Sara L. Walton
Assistant United States Attorney